UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BOSWELL, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>MICHAEL BABCOCK, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-06571-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS AND SETTING INITIAL CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 11 |

Now before the Court for consideration is the motion to dismiss filed by Michael Babcock ("Babcock"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing scheduled for December 11, 2020, and it HEREBY GRANTS, IN PART, AND DENIES, IN PART, Babcock's motion, with leave to amend.

**BACKGROUND**

Plaintiffs, Joseph Boswell ("Boswell") and Greg Sarlo ("Sarlo") (collectively "Plaintiffs"), bring claims against Babcock and two corporate defendants, Pure Natures Design, Inc. ("PND") and Xtreme Healthy Lifestyles, Inc. ("Xtreme"), for breach of contract (oral and written), intentional and negligent misrepresentation, and defamation.[1] PND and Xtreme are multi-level

---

[1] Although the cases have not been related under the Northern District Civil Local Rules, this is not the first time the parties have been before this Court. On August 18, 2020, PND filed a complaint against Boswell and Sarlo for, *inter alia*, breach of contract, intentional interference with contractual relations, misappropriation of trade secrets, and defamation, as well as an application for a temporary restraining order. *See* No. 20-cv-5802-JSW, *Pure Natures Design, Inc. v. Boswell*. The Court denied PND's application for a TRO. PND filed a notice of voluntary dismissal shortly before Boswell and Sarlo filed their answer and counterclaims. The Court dismissed those claims, without prejudice, in light of their response to an order to show cause, in

1    marketing ("MLM") companies.  MLM's market and sell products through a series of independent

2    distributors through a "downline" organizational structure.  (Compl. ¶ 17.)

3       Boswell alleges that Babcock urged him to join Xtreme in or about 2018, and Boswell

4    agreed on the condition that Babcock agree to a binary compensation plan, which would allow

5    only for two downline organizations, instead of the unitary compensation plan that existed, which

6    had several downline organizations.  (*Id.* ¶¶ 15-16, 18.)  Boswell was not required to buy Xtreme

7    products or submit a Brand Partner application, which are conditions that usually apply when

8    joining an MLM.  (*Id.* ¶ 19.)  According to Boswell, in order to induce him to join Xtreme as a

9    "Master Distributor", Babcock promised him a minimum income of $20,000 for five months, 5%

10   ownership of Xtreme, 5% ownership of a coffee roasting facility[2] that Babcock represented he

11   owned, and free unlimited Xtreme products "and other perks."  (*Id.* ¶ 20.)  Boswell alleges he was

12   paid the first $20,000, but that Babcock struggled to make payments after that point.  (*Id.* ¶ 22.)

13      In 2019, Babcock formed PND, which he represented was a "new" company that would

14   sell hemp and CBD products.  Boswell alleges Xtreme, which was not supposed to sell CBD

15   products, sold many of the same products as PND.  (*Id.* ¶¶ 24-25.)  Boswell also alleges that

16   Babcock offered him a 5% stake in PND, or 500,000 shares, which Boswell represented were

17   worth .50 cents each.  Babcock also asked if Boswell would be willing to accept a reduced income

18   of $10,000 per month, to which Boswell agreed on the condition that Babcock "promise that

19   Boswell and his wife, who also was a distributor for PND, would build the 'right side' (meaning

20   one of the two downlines) of the company only."  (*Id.* ¶ 27.)  Boswell alleges he agreed to those

21   conditions as a friend of Babcock's who could see that PND was struggling financially.  (*See id.*

22   ¶¶ 26-27.)  Babcock and Boswell allegedly entered into an oral agreement that Boswell would

23   never have to build the "left side", that Boswell's wife would be ranked right below Boswell, and

24   that no-one would be ranked above them without their consent.  Boswell then built the right side

25

---

26   which they advised the Court that they had filed this action.  The Court received this case upon
27   reassignment from Magistrate Judge Beeler when Boswell and Sarlo declined to proceed before a magistrate judge.

28   [2] Xtreme produced fat burning coffee, iced tea, and other health products.  (Compl. ¶ 12.)

United States District Court
Northern District of California

of PND and brought in revenue of $1 million, whereas Babcock was never able to grow the left side. Babcock also stopped paying Boswell the agreed upon $10,000 in December 2019. Boswell also alleges that Babcock tried to make backdoor deals with Boswell's distributors, including offering them percentages of ownership in PND. (*Id.* ¶¶ 29-30.)

According to Boswell, Babcock continued to make untrue representations relating to Xtreme and PND and took other actions that Boswell alleges violated the parties' oral argument, including promoting an individual hired to grow PND's business over Sarlo, who was one of Boswell's top distributors. (*See id.* ¶¶ 31-37.) As the situation continued to deteriorate, Boswell agreed to sell his position as Master Distributor to Babcock for $20,000, which was documented in a Purchase Agreement. Under the terms of that agreement, Boswell's wife would continue to be ranked right below the Master Distributor. Boswell alleges that Babcock breached the Purchase Agreement by calling distributors and advising them that Boswell was no longer with PND, which hurt Boswell's wife's business. (*Id.* ¶¶ 38-41.) Boswell eventually joined a new business, and he claims Babcock retaliated against him by terminating his wife's Brand Partner status. (*Id.* ¶¶ 42-43.)

Sarlo joined PND in January 2020, and he alleges that Babcock promised him a share of all CBD sales, which he never received, and a guaranteed income of $8,000 per month, which he also never received. Sarlo also alleges that Babcock represented that PND was backed by "millions of dollars" and would "be able to build something long term." Sarlo was not required to sign a PND "Brand Partner Agreement." (*Id.* ¶¶ 45-54.) Sarlo also alleges that Babcock invited a number of MLM leaders to visit PND and while they told him PND would not make it, Babcock represented that it was not PND that had issues. Sarlo also alleges that Babcock told Sarlo's team leaders that he – Sarlo – was saying negative things about them to create divisions. When Sarlo told Babcock he was unhappy and wished to leave, Babcock offered to bring in an outside coach, whom Babcock then ranked above Sarlo. (*Id.* ¶¶ 55-58.) Sarlo then learned Babcock was not fulfilling his obligations to the coach, who told Sarlo that "he would never bring his people into" PND. As with Boswell, the relationship between Sarlo and Babcock deteriorated to a point that Sarlo left. He alleges that after he left, Babcock tried to bait others within PND to suggest that Sarlo was

3

saying negative things about PND and that Sarlo was trying to recruit them to work for Boswell and his new company. He claims his reputation and income has been destroyed because of what Babcock has said about him. (*Id.* ¶¶ 59-69.)

The Court shall address additional facts as necessary in the analysis.

## ANALYSIS

### A.     Applicable Legal Standards.

Babcock moves to dismiss each of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Where a plaintiff alleges fraud, Rule 9(b) requires the plaintiff to state the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b). Particularity under Rule 9(b) requires the plaintiff to plead the "who, what, when, where, and how" of the misconduct alleged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

4

**B.     The Court Dismisses the Breach of Contract Claims, With Leave to Amend.**

Babcock moves to dismiss each of the breach of contract claims on the basis that the contracts Plaintiffs entered were with PND or Xtreme, and Plaintiffs fail to allege facts to show he can be held liable. Babcock also alleges that all claims asserted by Boswell are barred by the terms of the Purchase Agreement. The Court will address that argument in Section __, *infra*.

Plaintiffs concede they have failed to allege facts that would support piercing the corporate veil but seek leave to amend. Accordingly, the Court GRANTS, in part, Babcock's motion to dismiss, and it dismisses the first two claims for relief, with leave to amend.

**C.     The Court Dismisses the Misrepresentation Claims With Leave to Amend.[3]**

Babcock also moves to dismiss the intentional and negligent misrepresentation claims on the basis that the allegations are conclusory and fail to satisfy the standards of Rule 9(b). Boswell alleges that "Babcock represented to [him] that he would have the freedom, as the Master Distributor of PND, to build one side or downline of PND without interference from Boswell [*sic*] and that no other distributor(s) would be ranked above Boswell or his wife."[4] (Compl. ¶ 84.) Sarlo alleges that Babcock represented to him that "PND was backed by millions of dollars and would be a viable long-term business for Sarlo to join, and that Sarlo should resign as a distributor from [his current employer] to join PND." (*Id.* ¶ 85.) Plaintiffs allege Babcock made the allegedly false representations, and they allege Boswell made many of the misrepresentations at the time Boswell asked them to join Xtreme and/or PND. Therefore, they have alleged facts to show who made the alleged misrepresentations and some information about when Babcock made those statements.

Contrary to Babcock's argument, Boswell and Sarlo do include some allegations about

---

[3] Babcock also asserts Plaintiffs' allegations are insufficient to support a claim for special damages. Plaintiffs request leave to amend to include additional allegations about that request. In light of the Court's ruling on the motion to dismiss these claims, the Court does not reach the issue of whether the allegations are sufficient to support a request for special damages. Babcock may renew that argument in a subsequent motion to dismiss.

[4] When the Court looks at the allegations in their entirety, the reference to "without interference from Boswell" would appear to be an error and that the sentence should read "without interference from Babcock." The same issue exists in paragraph 92. Boswell shall clarify that issue in the amended complaint permitted by this Order.

why the alleged representations were false, but the Court concludes that further specificity is necessary. (*See, e.g.,* Compl. ¶¶ 24-25, 30, 37, 50, 55-56.) The Court also concludes Sarlo's allegations do not explain with particularity why Babcock's representations about PND's financial security were false when made.

Accordingly, the Court GRANTS the motion to dismiss the misrepresentation claims, with leave to amend. Plaintiffs shall provide further specificity as to when the alleged statements were made and why they were false when they file their amended complaint.[5]

### D. The Court Dismisses Sarlo's Defamation Claim, with Leave to Amend.

Babcock moves to dismiss Sarlo's claim for defamation on the basis that the facts that Babcock "bad-mouthed" Sarlo are insufficient. Sarlo has asked for leave to amend this claim, and Babcock has not shown it would be futile to do so. Accordingly, the Court GRANTS, as unopposed, Babcock's motion to dismiss this claim, with leave to amend.

### E. The Purchase Agreement.

Babcock also argues that the Court should consider the Purchase Agreement under the incorporation-by-reference doctrine. The Purchase Agreement begins by stating that Babcock agreed to purchase Boswell's Master Distributor position for $20,000. The parties then agreed "[t]his completes all financial obligations and agreements [b]etween Boswell and Babcock whether verbal or written, past agreement [*sic*], conversations, text communications or email made between Babcock and Boswell." (*See* Declaration of Michael Babcock, ¶ 5, Ex. A (Purchase Agreement).) Babcock attests the Purchase Agreement "was to act as a settlement of all claims arising from Mr. Boswell's employment with PND and Xtreme." (*Id.* ¶ 4.) Boswell argues the Court cannot consider the Purchase Agreement.

On a motion to dismiss, the Court generally may not consider materials outside of the complaint. The incorporation-by-reference doctrine is an exception to that rule, and it permits a court to consider documents that may be referenced "extensively" in a complaint or which "form[]

---

[5] The Court does not address Babcock's argument, raised for the first time on reply, that Plaintiffs' allegations merely constitute a promise made without an intent to perform. The Court will give Babcock leave to renew that argument, if Plaintiffs' amended complaint supports a motion to dismiss on that basis.

the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (internal quotations and citations omitted). "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document[.]" *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). In addition, "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002.

Although Boswell does not bring a breach of contract claim based on the Purchase Agreement, many of the promises that form the basis of Boswell's misrepresentation claims are contained in the Purchase Agreement. Boswell also alleges "Babcock breached the Purchase Agreement and undermined Tamra Boswell's business by calling numerous distributors and telling them Boswell was no longer with PND." (*Compare* Compl. ¶¶ 27, 37, 40-41 *with* Purchase Agreement.) Assuming for the sake of argument the Court could consider the Purchase Agreement under the incorporation-by-reference doctrine, it cannot consider the statements in Babcock's declaration. At this stage of the proceedings, the Court cannot say the language on which Babcock relies definitively precludes Boswell's claims. Accordingly, the Court DENIES, IN PART, Babcock's motion to dismiss on that basis.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Babcock's motion to dismiss, with leave to amend. Plaintiffs shall file an amended complaint by no later than January 8, 2021. In light of this ruling, the Court VACATES the deadline for PND and Xtreme to respond to the complaint, set forth in the Order granting their motion to dismiss for insufficient service of process.

All Defendants shall answer or otherwise respond to Plaintiffs' amended complaint by no later than February 5, 2021.

It is FURTHER ORDERED that the parties shall appear for an initial case management conference on March 26, 2021 at 11:00 a.m., and they shall file a joint case management

//

//

1    conference statement on March 19, 2021.

2    **IT IS SO ORDERED.**

3    Dated: December 7, 2020

_____
JEFFREY S. WHITE
United States District Judge